## Brewer v. Otoe County.

1 CONSTITUTION: *Act impairing the obligation of a contract.* An act requiring the holder of a county warrant, which is over due and which draws ten per cent per annum interest, to present the same at the treasury, and surrender it and take in its place bonds drawing interest at seven per cent per annum, payable at a distant day, is unconstitutional.

2. STATUTE OF LIMITATIONS: *County warrants.* The Statute of Limitations does not limit the time within which proceedings to enforce the payment of county warrants shall be instituted.

> 1st arg. The whole course of legislation shows that county warrants are not within the statute.

> 2d arg. The cause of action upon a county warrant does not accrue when the warrant is issued, but only when the money for its payment is collected, or time sufficient for the collection of the money has elapsed.

3. ACTIONS ON COUNTY WARRANTS. A petition alleging the issue and non-payment of a county warrant, without alleging that there is money in the treasury for its payment, or that time has elapsed for the collection of the money by taxation, will be dismissed without prejudice.

This was a petition in error to the District Court for Otoe county.

Brewer filed in that court his petition as follows:

I. The said Francis B. Brewer, plaintiff, complains of the said Otoe county, defendant, for that the said defendant, on the fifth day of February, 1863, at Nebraska city, in said county, by and through the then Board of County Commissioners of said county, made and drew her certain warrant in writing of that date, on the treasurer of said county, signed by one George T. Lee, the then president of said board, and countersigned by one E. W. Botsford, clerk of said county, and attested by the seal of said county being thereto affixed, and then and there delivered the same to the said plaintiff, and thereby and therein ordered and directed the said treasurer to pay to the said plaintiff, by the name and description of Francis Brewer, or order, the sum of eighty-one dollars and forty-eight cents, out of

BREWER v. OTOE COUNTY.

any money in the treasury of said county not otherwise appropriated. That afterwards, and on the 7th day of January, 1863, the said plaintiff presented said warrant to the treasurer of said county, and demanded payment of the same, which was refused by said treasurer, who thereupon, on the day and year last aforesaid, endorsed on said warrant, "presented and not paid for want of funds," That said defendant has not paid said sum of money nor any part thereof to the said plaintiff, although often requested so to do, and that there is now due to the said plaintiff from the said defendant, on the said warrant, the said sum of eighty-one dollars and forty-eight cents, which he claims with interest thereon from the 7th day of January, A. D. 1863, at the rate of ten per cent per annum; a copy of which warrant is hereto attached as follows:

$81.48.    Fiscal year, A. D. 1862.    No. 471.

Treasurer of Otoe county, pay to the order of Francis Brewer the sum of eighty-one dollars and forty-eight cents, out of any money in the treasury not otherwise appropriated.

GEORGE T. LEE,
*President Board County Com.*

Given under my hand and the seal of said county, this 5th day of January, 1863.

E. W. BOTSFORD,
*County Clerk Otoe County, N. T.*

Endorsed on back as follows:

"Presented and not paid for want of funds."

J. W. PEARMAN.

JANUARY 7, 1863.

The petition contained fourteen counts of the same character. To the petition a general demurrer was filed as follows:

·BREWER *v.* OTOE COUNTY.

"The said defendant demurs to said petition of said plaintiff, because it does not state facts sufficient to constitute a cause of action."

This demurrer was overruled by the court, and defendant required to answer. The defence set up by the defendant appears in the opinion of the court. To the answer a demurrer was filed, which was sustained, and judgment given for the plaintiff for the amount claimed, to which defendant excepted. It then brought the case here by petition in error.

*S. H. Calhoun* and *John H. Croxton,* for plaintiff in error.

This action is founded on seventeen Otoe county warrants, of different denominations, issued by the commissioners of Otoe county, drawn on the treasurer of said county and ordering him to pay the amounts therein specified, to the payees, out of any money in the county treasury not otherwise appropriated, without naming any time at which the same should be paid, and without naming any rate of interest.

They were, however, presented to the treasurer, and by him indorsed, "presented and not paid for want of funds," By statute, from this indorsement, the warrants would draw ten per cent per annum interest.

These warrants bear date, and were presented as follows:

No. 471, January 5, 1863. Presented January 7, 1863.
No. 291, January 7, 1861. Presented Sept. 16, 1861.
No. 289, January 7, 1861. Presented Sept. 16, 1861.
No. 1105, Feb'y 6, 1860. Presented March 5, 1860.
No. 289, Sept. 24, 1858. Presented Feb'y 28, 1859.
No. 1043, Feb'y 6, 1860. Presented April 5, 1860.
No. 1045, Feb'y 6, 1860. Presented March 5, 1860.
No. 1037, Feb'y 6, 1860. Presented April 5, 1860.

Brewer *v.* Otoe County.

No. 1061, Feb'y   6, 1860.   Presented March     5, 1860.
No.  437, January  5, 1863.   Presented January  7, 1863.
No.  453, June    3, 1861.   Presented Sept.    16, 1861.
No.  955, Dec.   23, 1859.   Presented Dec.     28, 1859.
No.  157, March   6, 1858.   Presented Dec.      3, 1858.
No. 1059, Feb'y   6, 1860.   Presented April     5, 1860.
No. 1044, Feb'y   6, 1860.   Presented April     5, 1860.
No. 1047, Feb'y   6, 1860.   Presented March     5, 1860.
No. 1048, Feb'y   6, 1860.   Presented March     5, 1860.

On the 10th of February, A. D. 1865, an act to provide for the funding of the warrants of Otoe county was approved, by which it was enacted that all Otoe county warrants bearing date prior to January 1, 1864, and outstanding, should be presented and bonded before the first day of December, 1865, or be forever barred, and that such warrants should thereafter be null and void. · Said bonds to be payable on or before January 1st, A. D. 1873.

These warrants amounting, as alleged in defendant's · petition to $411.40, were not presented and bonded under said funding act. Nor were said warrants ever presented for bonding under said act, and consequently no refusal was ever given by said county to bond them. Therefore, by the terms of said act, said warrants are barred, and defendant had no cause of action.

But plaintiff claims that the legislature of Nebraska did not possess the power and authority to enact such an act, that such act impairs the obligation of the contract made by the county with the payees of said warrants, and, therefore, said act is unconstitutional and void under section 10 article 1 of the Constitution of the United States.

In considering this objection the question naturally occurs, What is the nature and scope of this law ?

Is it a limitation law, which affects only the remedy ?

Or does it go further ; and while it authorizes and directs

the county tó take up the orders or warrants outstanding against it, and to give in the stead thereof its bonds, does it, in any way, affect the essence of the contract, existing between the county and the warrant holder, to the injury of the latter ?

We claim that this act is a limitation law, because in section 5 it provides that payment of all Otoe county warrants or orders which were issued prior to January 1, 1864, and which were not presented and funded, or bonded, in accordance with its provisions prior to the first day of December, 1865, should be forever barred.

This section does just what all limitation acts do. It fixes the time in which payment of the debts in question may be enforced, and beyond which the same shall not be enforced by the courts. In other words it fixes the time in which parties interested may seek and obtain a remedy, and beyond which the remedy will be denied.

But it is claimed that the words "and such warrants shall, after the said first day of December, A. D. 1865, be null and void," in said section 6, render the entire act void. If the section had read that "all the warrants, &c., issued prior to January 1, 1864, and which was not presented, funded or bonded prior to the first day of December, 1865, shall, after the first day of December, A. D. 1865, be null, and void," there might be some force in the objection. But such is not the section under consideration.

As has already been shown, this section, down to the word "barred," is simply a limitation of the time in which the warrant holder could have enforced payment of his warrants, and then it proceeds with the words "and such warrants shall, after the said first day of December, A. D. 1865, be null and void," which words, if they mean any-thing in the construing of this statute, means that after said first day of December, 1865, the remedy of the warrant holder shall be denied, if he seek to enforce payment. To

give these words the meaning, force and effect claimed for them by plaintiff, would be to destroy the whole object and purpose of the act, which manifestly was to provide for the payment of the outstanding warrants of the county, by a given time named therein with interest on them.

Indeed, we think no violence would be done to the intention of the legislature if these words were considered to be surplusage.

The legislature may and can regulate and modify the remedy on contracts, may shorten or change the statute of limitation, without impairing the obligation of the contract.—*Sturges* v. *Crowningshield*, 4 *Wheat.* 122 ; *Bronson* v. *Kinzie*, 1 *How.* 311 ; *McCracken* v. *Haywood*, 2 *How.* 608 ; *State of Alabama* v. *Dalton*, 9 *How.* 522 ; *Bronson* v. *Newberry*, 2 *Doug.* (*Mich.*) 38 ; *Rockwell* v. *Hubbell*, 2 *Doug.* (*Mich.*) 197 ; *Tarpley* v. *Hamer*, 9 *Smedes* & *Marsh*, 310 ; *Bruce* v. *Skuyler*, 4 *Gilman*, 221 ; *Ruggles* v. *Keeler*, 3 *Johns.* 263 ; *King* v. *Dedham*, 15 *Mass.* 447 ; *Holbrook* v. *Finney*, 4 *Mass.* 566 ; *Call* v. *Hagger*, 8 *Mass.* 430. To the same point see Smith's Commentaries on Constitutional Law, sec. 254, 265 and authorities cited in ref. "A."—*Story on the Constitution,* sec. 1383.

Municipal corporations are subject to the operation of statutes of limitation in the same manner and to the same extent as natural persons.—*McKinncy* v. *McKinney*, 8 *Ohio*, 594.

The legislature may change (the character of) the security by the substitution of one more beneficial.—*Holbrook* v. *Finney*, 4 *Mass.* 566 ; *Miller* v. *Miller*, 16 *Mass.* 59 ; *Burghardt* v. *Turner*, 12 *Pick.* 534.

The State legislature may impair a contract itself, but cannot impair the obligations of the contract.—*Ogden* v. *Saunders*, 12 *Wheat.* 213.

If to this it is objected that the act bars the warrants,

BREWER v. OTOE COUNTY.

we reply that it bars them only as a statute of limitations bars them. And of this above.

*I. N. Shambaugh*, for defendant in error.

The defendant in error insists that no errors were committed by the court below in this cause, and relies upon the following points and authorities :

I. The plaintiff's amended demurrer to the defendant's answer was properly sustained by the court below. The answer sets up no legal or equitable defence.

II. The act of the legislature of the Territory of Nebraska relied on by the defendant below, was passed in violation of the 10th section of the 1st article of the Constitution of the United States, and is null and void.—1 *Kent's Com.* 449, 456 *and note* 1, 457, 461, 462 *and note B,* 463, 464 ; 6 *Cranch,* 87 ; 7 *Cranch,* 164 ; 9 *Cranch,* 43 ; 4 *Wheat.* 518 ; 8 *Wheat.* 1 ; 4 *Wheat.* 122. Smith on Constitutional Law, 248–259.—18 *Curtis,* 358 ; 10 *How.* 190.

III. The act of the legislature of Nebraska impairs the obligation of the contract. The county warrants were made, by a prior act of the legislature, a legal tender in payment of taxes. The act of February 10, 1865, was passed after the warrants were issued and required the holder to surrender his warrants and receive bonds, payable in eight years, and such bonds are not receivable in payment of taxes.—18 *Curtis,* 358.

IV. The statute of limitations does not apply to this case. County warrants are not embraced in the provisions of that statute. A county warrant is in the nature of a domestic judgment, and is not barred by the statute. The statute does not run in favor of a county against a judgment rendered by the board of county commissioners, and a warrant issued by the county in its corporate capacity.

LAKE, J.

BREWER v. OTOE COUNTY.

The defendant in error brought his action in the court below, to recover a judgment upon several warrants drawn by the county commissioners of Otoe county upon its treasurer, at various times between the 24th day of September, 1858, and the 5th day of January, 1863. To the petition the county filed a general demurrer which was overruled, but no exception taken thereto. Thereupon an answer was filed admitting the drawing of the warrants, but denying the liability of the county, for the reason that they were all rendered null and void by the provisions of the act of the late Territorial legislature, entitled "An act to provide for the funding of the warrants of Otoe county, approved February 10, 1865."

To all except the first three causes of action there was interposed the further defence of the statute of limitations, viz : that they did not accrue to the plaintiff within five years next before the commencement of the suit.

To the answer, Brewer filed a general demurrer which was sustained, and judgment thereupon rendered in his favor for the amount due on the several warrants sued on, to which ruling and judgment the defendant excepted.

Two errors are relied on to reverse this judgment.

1. That the court erred in sustaining the demurrer to the answer, and

2. In rendering judgment for the plaintiff when it should have been in favor of the defendant.

The questions presented are very important, involving as they do the constitutionality of the act of the legislature before referred to.

It is unnecessary here to decide whether the legislature, in an act authorizing a county to fund its indebtedness, can require the holders of its warrants, which are due, to surrender them and receive in lieu thereof its bonds payable several years thereafter. That the legislature is invested with any such power may well be doubted. But the act

BREWER v. OTOE COUNTY.

before us does not stop here. It, in direct terms, provides that these warrants, which by the law of the land in force when they were drawn, bore interest at the rate of ten per cent per annum shall be exchanged, without the consent of the owner, for bonds payable on the first day of January, 1873, with interest at the rate of seven per cent per annum.

The effect of this would be to set aside and wholly annul a solemn contract which the county had made with one who had given it credit, and without his knowledge or assent to substitute another not only radically different in its terms but greatly to his prejudice.

Section 2 of the act provides that no bond shall be issued for a less sum than twenty-five dollars, so that the holder of a warrant for less than that amount would not have been entitled to a bond therefor, and yet by the sixth section of the act it is provided that "all warrants issued prior to January 1, 1864, which are not presented and bonded prior to December 1, 1865, shall be forever barred."

I must confess that if all this may be done, I can see no limit to the exercise of arbitrary, despotic power by the legislature over personal contracts. I cannot give my assent to so dangerous a proposition, and must deny its authority. I do not feel at liberty to concede to the legislature any such power, and am forced to the conclusion that the act in question violates one of the provisions of the tenth section of the first article of the Constitution of the United States, as well as the twelfth section of the first article of the Constitution of Nebraska, and therefore must be declared and held to be wholly inoperative as to these warrants and to furnish no defence to a recovery thereon.

The plaintiff, then, was under no legal obligations to present his warrants for bonding, nor is the county, by reason of his failure to do so, released from its obligation to receive them in payment of county taxes, or whenever the necessary funds are in the treasury to pay them on presentation, just

BREWER v. OTOE COUNTY.

the same as if this act had never been passed. It in no wise releases the county from the obligation it assumed when the commissioners issued these warrants.

This view of the case would enable the court to dispose of it without considering the question raised by the plea of the statute of limitations, but as this is fairly presented in the record and is relied on by counsel, I will give it a brief notice.

Section 10 of title 2 of the Code provides that " an action upon a specialty or any agreement, contract, or promise in writing, or foreign judgment, can only be brought within five years after the cause of action shall have accrued." This provision applies as well to actions where counties or other municipal corporations are parties as between private persons. The law recognizes no distinction in suitors, but is the same rule unto all.

But these warrants do not, nor was it the intention of the legislature that they should, fall within the operation of this act. When a demand or claim against a county is presented to the commissioners for settlement, they hear the proofs and determine whether it is one which the county is bound to pay, and the amount due thereon. In this they act judicially, and, within the scope of the authority conferred upon them, their decision is a judgment binding upon the county. If they decide in favor of the claimant an order is drawn upon the treasurer for the amount, designating the fund out of which it is to be paid. If there be money in the treasury belonging to the fund against which it is drawn, not otherwise appropriated, it is the duty of the treasurer to pay the warrant; but if there be none he must indorse upon it the fact of its presentation, and non-payment for want of funds, and the holder must wait for his money until such time as it can be raised through the means which the legislature provides for the collection of revenue. Nor can any action rightfully be brought on such

BREWER v. OTOE COUNTY.

warrant until the fund is raised, or at least sufficient time has elapsed to enable the county to levy and collect it in the mode provided in the revenue laws.

That the legislature never intended that county warrants should be affected by the limitation act before referred to is evident, I think, from the whole course of legislation respecting them. As late as the 12th of February, 1866, it was enacted that "all debts heretofore incurred by the county commissioners of any county acting in good faith, and duly recorded at the time on their books, shall be deemed valid, and the county shall be held liable for the same." Chap. V, sec. 1, Rev. Stat.

Chapter IX, Section 1 provides that "all county orders *heretofore* drawn, or that may hereafter be drawn, by the proper authorities of any county, shall, after having been presented to the county treasurer and by him endorsed not paid for want of funds in the treasury, draw interest from said date at the rate of ten per cent per annum."

From these, as well as numerous other enactments of the legislature that might be cited, I have reached the conclusion that the plea of the statute of limitations cannot be successfully made against these warrants, and that whenever it can be shown that the funds have been collected out of which they can be paid, or sufficient time has been given to do so in the mode pointed out in the statutes, their payment may be demanded, and, if refused, legally coerced.

It only remains now to determine whether the judgment of the court can be sustained, whether the facts set forth in the petition constitute a cause of action. It states that the several warrants were drawn upon the treasurer, payable out of any money in the treasury not otherwise appropriated. This must be considered as a provision for their payment out of any money belonging to the general fund then in the treasury or which should be afterwards collected. The treasurer had no authority to pay them out of the road,

bridge or school funds, because they are drawn against neither.

It has been the constant practice, from the first settlement of our State, to anticipate both the general and special funds by drawing orders against them in advance of their collection. This practice has been repeatedly recognized by the legislature, especially in section two, chapter five of the Revised Statutes, which provides that "it shall not be lawful for any board of county commissioners to issue any warrant or order, on the county treasurer, for any sum or sums of money exceeding in the aggregate the amount said board have levied by tax for the current year."

Whoever deals with a county and takes in payment of his demand a warrant, of the character of these, no time of payment being fixed, does so under an implied agreement that if there be no funds in the treasury out of which it can be satisfied, he will wait until the money can be raised in the ordinary mode of collecting such revenues. He is presumed to act with reference to the actual condition and the laws regulating and controlling the business of the county. He cannot be permitted, immediately upon the receipt of such warrant, to resort to the courts to enforce payment by judgment and execution, without regard to the condition of the treasury at the time, or the laws by which the revenues are raised and disbursed.

This leads us to the conclusion that there is no right of action shown by the petition, and that the demurrer interposed by the defendant should have been sustained and the action dismissed. For these reasons the judgment of the District Court is reversed, and the case remanded with instructions to dismiss the action without prejudice.

Judgment reversed and cause remanded.