[No. 8143.]

OSTLING, CITY TREASURER OF LEADVILLE, v. THE PEOPLE EX REL.

MUNICIPAL CORPORATIONS—*Annual Revenue to be Applied to Annual Expenses*—Under Rev. Stat. secs. 6631-6633, the annual revenue of every municipal corporation must be applied to discharge the expenses of the corporation during the year in which it is raised, and may not be applied to any other purpose, until the expenses of the year to which the funds belong have been satisfied. (27, 28)

Secs. 6644, 6645, 6647, are to be construed in connection with section 6631, and so construed merely require that warrants drawn on the funds of a particular year must be paid in the order of registration, out of the funds of that year applicable to the purpose. *People v. Austin*, 11 Colo. 134, distinguished. (28)

*Error to Lake District Court.*—Hon. Charles Cav-vender, Judge.

Mr. John M. Maxwell, and Mr. R. D. McLeod, for plaintiffs in error.

Messrs. Hogan & Bonner, for defendant in error.

Defendant in error as relator instituted an action in mandamus against plaintiff in error, treasurer of the city of Leadville, and others, as respondents, the purpose of which was to compel the treasurer to apply funds in her hands to the payment of city warrants held by relator. Judgment was rendered in favor of relator and respondents have brought the case here for review on error.

In the alternative writ it was alleged that relator was the holder of legal warrants of the city which had been duly issued and registered. It set out a list of such warrants, 72 in number, giving date of issue and registration, and the number and amount of each warrant, the number of the first being 8242, in the sum of $304.25, dated December 9th, 1908, and registered the following day, all aggregating over $5,500.00, the last of which was dated August 3, 1912, and registered May 6, 1913. It stated that the total amount of unpaid warrants of the city, including those held by relator, approximated $264,-000.00, and that during the past thirty years the city, within the last quarter of each fiscal year, had passed an ordinance termed the "Annual Appropriation Bill," in and by which such sums as were necessary to defray the expenses and liabilities of the city for such fiscal year were appropriated, and alleged that the city council never added to the corporate expenses, in any one year, any amount in excess of the annual appropriation; that during all the times mentioned the treasurer, at the end of each month, made a report to the council, of the balance in the treasury, as required by law, and that all the warrants held by relator were drawn upon the treasurer of the city, in which was stated the particular funds upon

which they were drawn, and that during all the times
mentioned in the writ, whenever the city treasurer had
funds on hand to the amount of $500.00 or over, such
treasurer applied such funds to the redemption of an
equal amount of such outstanding warrants as were en-
titled to preference as to payment, according to the order
of time in which they had been registered. It was then
alleged that the city treasurer had informed relator that
she now had on hand funds to an amount of $500.00 and
over, which should be applied to the redemption of war-
rants as provided by law, but stated that she would not
issue calls for warrants, for the reason that the city coun-
cil had instructed her that they intended to apply the cur-
rent revenue of the city to the payment of current ex-
penses for the fiscal year beginning April 13, 1913. There
is then set out the form of warrant adopted by the coun-
cil, from which it appears, in connection with the resolu-
tion adopting such form, that it was the purpose of the
city to issue warrants for current expenses thereafter in-
curred, payable out of the funds realized from taxes and
all other sources of revenue for the fiscal year beginning
in April, 1913. For return the respondent answered that
the warrants held by relator were issued at a time when
the indebtedness of the city was in excess of the amount
which it could lawfully incur, and that therefore they
were invalid, and alleged that no appropriation was made
in 1913 for the payment of outstanding warrants issued
prior to the fiscal year beginning that date. To this re-
turn relator replied putting in issue the affirmative de-
fenses of the respondents. The cause was submitted to
the court on an agreed statement of facts from which it
appears that the relator was the owner of warrant No.
8242, and others, issued in the respective sums named in
the alternative writ, and dated and registered as therein
alleged, and except for the institution of this action the
respondents would have used the funds in cash on hand
in the city treasury for the payment of the immediate
current expenses of the city, regardless of the outstand-
ing unpaid, registered warrants; that No. 8242 was

drawn on the street lighting fund for November, 1908; that the other warrants were issued at different dates, to different payees, for different amounts, and were drawn on different funds, and registered at different times; that all were drawn during fiscal periods prior to the fiscal year beginning in 1913, and that the appropriation bill for 1913 was to defray the expenses of the city for the fiscal year beginning in April of that year. It was further stipulated that during all the times mentioned in the alternative writ the city had outstanding registered warrants amounting to approximatelyl $250,000.00 face value; that these warrants were issued for salaries and current expenses, and that the amount of such outstanding warrants during this period exceeded three per cent of the assessed valuation of the taxable property in the city, such valuation being substantially the sum of $2,-100,000.00. In brief, from the pleadings and the stipulation of facts the city challenges the right of the relator to have the funds in the hands of its treasurer, realized and to be realized from the revenues for the fiscal year beginning April, 1913, applied to the payment of such warrants, and claims the right to use such funds to discharge warrants drawn to meet current expenses for that period.

Mr. JUSTICE GABBERT delivered the opinion of the court:

From the foregoing statement it appears that the object of the action instituted by relator is to compel the payment of outstanding registered warrants in the order of registration, out of funds realized from the revenue for the fiscal year beginning in April, 1913; that all the warrants held by relator were issued and registered prior to the beginning of that fiscal year; that the appropriation of funds made by the city authorities for such year was to meet the current expenses of that period, and that no appropriation was made to discharge warrants issued during any previous period.

The argument of counsel has been mainly directed to the question of the validity of the warrants involved, it being contended by counsel for respondents that they are invalid, because they represent indebtedness incurred in excess of the constitutional and statutory limitation which cities are authorized to contract, while on the part of the relator it is claimed that the pleadings and agreed statement of facts disclose that the limit of indebtedness had not been reached when such warrants were issued. If, as claimed by counsel for respondents, such warrants are invalid, for the reason assigned, relator can not maintain his action, but should it appear that he is not entitled to have his warrants, even if valid, paid, out of the moneys appropriated and realized from the taxes and other sources of revenue for the fiscal year beginning in April, 1913, the question of their validity is of no moment in this case, and should not be determined.

Section 6631 of the Revised Statutes of 1908, is as follows:

"The fiscal year of each city or town organized under this act shall commence on the first day of April in each year, or at such other time as may be fixed by ordinance. The city council of cities and boards of trustees in towns shall, within the last quarter of each fiscal year, pass an ordinance, to be termed the annual appropriation bill for the next fiscal year, in which such corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation, and in such ordinance shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose. No further appropriations shall be made at any other time within such fiscal year, unless the proposition to make each appropriation has been first sanctioned by a majority of the legal voters of such city or town, either by a petition signed by them, or at a general or special election duly called therefor. Nor shall the total amount appropriated exceed the probable amount of revenue that will be collected during the fiscal year."

By the two sections immediately following the city authorities are inhibited from adding to the municipal expenditures of any one year anything over and above the amount provided for in the annual appropriation bill of that year; that no expenditure for an improvement to be paid out of the general fund shall exceed in any one year the amount provided for such improvement in the annual appropriation bill, and that no expense shall be incurred unless an appropriation has been made to meet it. There are certain exceptions which are not pertinent to any question involved in this case. The purpose of these statutes is to require municipal corporations to make provision whereby they will be enabled to adopt the policy, "Pay as you go," and to restrict the expenditures each fiscal year to the annual revenue for that period. This being the policy and purpose of the statute it must necessarily follow that the annual funds are applicable to the annual expenses when appropriated in advance for that purpose, and that the funds of one year, so set apart, may not be applied to the expenses of any other year, until all the expenses of the year to which the funds belong have been satisfied. In other words, the object of these statutory provisions is to permit a city to appropriate and apply its current revenues to the discharge of its current expenses, a course absolutely necessary to the accomplishment of the purposes for which it was created.

It appears to be urged in the briefs that because of the statutory provisions regarding the registration of warrants, the order in which they shall be paid, and calls for redemption, that warrants must be paid in the order of registration whenever there is cash in the hands of the treasurer in the sum of five hundred dollars or over to the credit of the funds upon which outstanding warrants are drawn, without regard to any particular revenue for any particular year from which such funds may have been derived. These provisions are to the effect that the treasurer of every city shall keep a register of warrants in which shall be entered the number and amount of each

warrant, the date of presentation and name of the person presenting it, and the particular fund upon which it is drawn—section 6644, Revised Statutes of 1908. That every fund shall be disbursed in taking up warrants drawn thereon in the order registered. Section 6645. And that the treasurer when he has on hand cash in a specific sum, or over, to the credit of any particular fund shall call in warrants payable out of such fund, in the order of their registration, section 6647. These statutory provisions, when considered in connection with section 6631, merely require that warrants drawn on the fund of a particular fiscal year must be paid in the order of registration out of the funds of that year applicable to that purpose. A contrary construction would lead to an anomalous result. In express terms section 6631, *supra*, requires municipal authorities to make in advance appropriations for each fiscal year to meet current expenses for that period. It further requires such authorities to specify the objects for which such appropriations are made and the amount appropriated for each object, and should it be held that such appropriations must be applied to the payment of outstanding registered warrants of previous years the municipal authorities in one breath are required to make an appropriation for a specified period and purposes, and in the next to apply the funds so appropriated to an entirely different purpose. All warrants held by relator were issued for expenses incurred by the city for fiscal periods prior to the fiscal year beginning in April, 1913, and we therefore conclude in the circumstances of this case that he is not entitled to have any of the funds realized from revenues for that fiscal year applied upon his warrants. In principle and by analogy we think the case of *Kephart v. People,* 28 Colo. 74, 62 Pac. 946, sustains this conclusion. In that case it was held that to justify a mandamus against the state treasurer to pay a state warrant it must affirmatively appear in the alternative writ that there is money in he hands of the treasurer belonging to the specific fund against which the warrant is drawn, and which came

from the revenue of that particular year, and that there are no other warrants entitled to prior payment sufficient to exhaust such fund.

As applicable to the facts of this case, the general rule is that a cause of action does not exist against a city on a warrant until a fund for its payment has been collected; *Forbes v. Grand County*, 23 Colo. 344, 47 Pac. 388. The fact that the revenues for a particular year are inadequate to meet the warrants for that year, payable out of such revenues, does not render the city liable thereon until a fund, which can be applied to their payment, is raised, or might have been, in the manner provided by law; *supra*. Persons purchasing such obligations take them subject to the mode of payment that the general assembly has provided; *Stryker v. County Commissioners of Grand County*, 77 Fed. 567, 23 U. S. C. C. A. 286.

Our conclusion that relator is not entitled to have funds realized from the revenues for the fiscal year beginning in April, 1913, applied upon his warrants, is in no sense in conflict with any previous decision of this court. The authority of county commissioners to appropriate funds to the payment of current expenses of a particular year, to the exclusion of warrants issued in previous years, was involved in the *People ex rel. v. Austin*, 11 Colo. 134, 17 Pac. 485. It was there held that section 637, General Statutes, which provided that county warrants should be entitled to a preference as to payment, according to the order of time in which they were presented to the county treasurer, entered into and formed a part of such warrants, and therefore the county was bound to give precedence to the payment of all warrants as the statute provided. The warrants there involved, however, were issued when there was no law, as now (sections 1215, 1216 and 1217, Revised Statutes 1908), requiring county commissioners to make an appropriation for each fiscal year, limiting the annual expenditures to such appropriations, and providing that no liability should be created against a county except an appropriation had been made to meet it; consequently

county warrants were not and could not be drawn on the revenues of any particular year, and hence were payable out of the funds in the hands of the treasurer belonging to the fund upon which they were drawn, without reference to the tax levy from which such funds had been derived. The difference between the statutory provisions with respect to county warrants in existence at the time the *Austin* case was decided, and the provisions on the subject of city warrants to which we have referred, clearly distinguishes it from the case at bar, for the reason that by these latter provisions the holder of a valid warrant issued by a city for current expenses of a fiscal year is entitled to be paid out of the revenues of that year, appropriated for that purpose. This is a part of the contract by virtue of the statute, and to hold that his rights thus fixed would be subject to the payment of warrants issued in previous years would impair the obligation of his contract.

The real question in the case is whether relator is entitled to have the revenues for the fiscal year beginning in April, 1913, applied to the payment of his warrants. We have determined that he is not, for reasons to which counsel have given little or no attention in their briefs, and perhaps at variance with their views on the subject, but we think we are justified in deciding the case upon the grounds stated, without expressing any opinion on the validity of the outstanding warrants of the city issued prior to the fiscal year beginning in April, 1913, as that question is of such supreme importance to both the city and warrant holders that it should not be determined until it becomes absolutely necessary to do so.

The judgment of the district court is reversed and the cause remanded with directions to dismiss the action at the cost of relator.

*Judgment reversed and cause remanded with directions to dismiss.*

Decision *en banc.*

CHIEF JUSTICE MUSSER not participating.